UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X
                                           :

U.S. BANK NATIONAL ASSOCIATION,         :
                                             :
                         Plaintiff,          :
                                               :
               -against-              :
                                               :    14 Civ. 04703 (SJF) (GRB)

SUN LIFE ASSURANCE COMPANY OF CANADA,    :
                                             :
                       Defendant.       :
                                               :
-------------------------------------------------------------------- X

<br><br>

**PLAINTIFF U.S. BANK NATIONAL ASSOCIATION'S
<u>REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

LEGAL ARGUMENT............................................................................................................... 3

    I.   New York Law, Not Delaware Law, Governs This Dispute ................................................3

           A.   Life Insurance Contracts Are Governed By the Law of the Insured's
                Domicile, and as Such, New York Law Governs the Policy.....................................4

                1.   The Center of Gravity Test Requires the Application of New York
                      Law ..................................................................................................................5

                2.   New York Follows the Restatement Approach Which Compels
                      Application of New York Law as the Law of the Insured's Domicile .............9

                3.   Mr. Van de Wetering – and Only Mr. Van de Wetering – Was the
                      Insured Under the Policy and that Fact Compels Application of New
                      York Law Under Either Test ........................................................................11

                4.   New York Has a Compelling Interest in Regulating Insurance
                      Contracts on the Lives of New York Citizens ..................................................12

    II.   Even if Delaware Law is Applied, U.S. Bank's Summary Judgment Motion
       Should Be Granted Because There Was an Insurable Interest Supporting the
       Policy ........................................................................................................................15

           A.   Mr. Van de Wetering Acquired the Policy of His Own Volition and for
                Legitimate Estate Planning Purposes.......................................................................15

           B.   Mr. Van de Wetering Paid For the Policy Using a Sun Life Approved
                Premium Financing Program That He Chose After  Evaluating His Loan
                Options, and He Paid The Origination Fee Himself.................................................19

           C.   The Trust Was Funded and Created by Mr. Van de Wetering ...............................22

           D.   Mr. Van de Wetering Was Not Bound to Sell the Policy to Any Coventry
                 Entity or Anyone Else...............................................................................................23

           E.   Mr. Van de Wetering Did Not Intend to Immediately Transfer the Policy ............24

    CONCLUSION................................................................................................ 24

# TABLE OF AUTHORITIES

## Cases

*2004 Stuart Moldaw Trust v. XE L.I.F.E., LLC*,
    374 F. App'x 78 (2d Cir. 2010) ...................................................................... 10, 12

*2004 Stuart Moldaw Trust v. XE L.I.F.E., LLC*,
    642 F. Supp. 2d 226 (S.D.N.Y. 2009). .............................................. 6, 10, 12, 15

*Am. Ref-Fuel Co. v. Employers Ins. Co.*,
    705 N.Y.S.2d 67 (N.Y. App. Div. 2000) .................................................... 14

*American Nat'l Insurance Co. v. Conestoga Settlement Trust*,
    442 S.W.3d 589 (Tex. Ct. App. 2014). ....................................................... 10

*Andersen v. Sun Life Assurance Co. of Canada*,
    No. 15 Civ. 4422, slip op. (S.D.N.Y. Nov. 13, 2015) ................................... 6

*Bowers v. Jefferson Pilot Fin. Ins. Co.*,
    219 F.R.D. 578 (E.D. Mich. 2004) .............................................................. 10

*Bush v. Mony Life Ins. Co. of Am.*,
    No. 3:07-cv-451, 2008 U.S. Dist. LEXIS 93885 (D. Conn. Nov. 10, 2008) ........... 10

*Columbia Cas. Co. v. Nat'l Emergency Servs.*,
    723 N.Y.S.2d 473 (N.Y. App. Div. 2001) .................................................... 14

*Dennis v. Aetna Life Ins. & Annuity Co.*,
    873 F. Supp. 1000 (E.D. Va. 1995) ............................................................ 10

*Dixhuit v. Pruco Life Insurance Co.*,
    No. 14-CV-2165, 2014 U.S. Dist. LEXIS 119758 (S.D.N.Y. Aug. 27, 2014) ........... 7

*Fireman's Fund Ins. Co. v. Schuster Films, Inc.*,
    811 F. Supp. 978 (S.D.N.Y. 1993) ............................................................... 9

*Greenberg v. Aetna Life Ins. Co.*,
    421 F. App'x 124 (2d Cir. 2011) .................................................................. 3

*Johansen v. Federation Life Ass'n*,
    447 F.2d 175 (2d Cir. 1971) ............................................................. 7, 10, 12

*Johnson v. Metro. Life Ins. Co.*,
    880 N.Y.S.2d 842 (N.Y. Sup. Ct. 2009) .............................................. 5, 10, 12

*Khan v. Lincoln Benefit Life Co.*,
    No. 3:05-0771, 2006 U.S. Dist. LEXIS 27919 (M.D. Tenn. Apr. 14, 2006) ........... 10

*Kramer v. Lockwood Pension Services Inc.*,
    653 F. Supp. 2d 354 (S.D.N.Y. 2009) ................................................... 6, 7, 8

*Mayo v. Hartford Life Ins. Co.*,
    354 F.3d 400 (5th Cir. 2004) ..................................................................... 11

*Melville v. Am. Home Assur. Co.*,
    584 F.2d 1306 (3d Cir. 1978) ..................................................................... 10

*New England Mut. Life Ins. Co. v. Caruso,*
535 N.E.2d 270 (N.Y. 1989) ............................................................... 1, 12, 13

*New England Mut. Life Ins. Co. v. Doe,*
710 N.E.2d 1060 (N.Y. 1999) ....................................................................... 13

*Patel v. New York Life Ins. Co.,*
No. 11-Civ-4895, 2012 U.S. Dist. LEXIS 72717 (S.D.N.Y. May 21, 2012). ............... 5, 10, 12

*PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Trust,*
28 A.3d 1059 (Del. 2011) .............................................................................. 24

*Preserver Ins. Co. v. Ryba,*
893 N.E.2d 97 (N.Y. 2008) ............................................................................ 14

*Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust,*
869 F. Supp. 2d 556 (D. Del. 2012) .............................................................. 24

*Prudential Ins. Co. of Am. v. Athmer,*
178 F.3d 473 (7th Cir. 1999) ......................................................................... 10

*Settlement Funding, LLC v. AXA Equitable Life Insurance Co.,*
No. 06 CV 5743, 2010 WL 3825735 (S.D.N.Y. Sept. 30, 2010) .......................... 7, 8

*Stout v. Home Life Ins. Co.,*
651 F. Supp. 28 (D. Md. 1986) ...................................................................... 10

*Tillman v. Camelot Music, Inc.,*
No. 02-CV-0761, 2003 U.S. Dist. LEXIS 21662 (N.D. Okla. Sep. 29, 2003) ......................... 11

*Turner Constr. Co. v. Navigators Ins. Co.,*
No. 157322/13, 2015 N.Y. Misc. LEXIS 2704 (N.Y. Sup. Ct. July 23, 2015) ........................ 14

*Westview Assocs. v. Guar. Nat'l Ins. Co.,*
740 N.E.2d 220 (N.Y. 2000) ............................................................................ 4

**Statutes**

N.Y. Ins. L. § 3203 (2015) .............................................................................. 14

**Other Authorities**

Restatement (Second) of Conflict of Laws § 192 ......................................... 9, 10, 11

Plaintiff U.S. Bank National Association ("U.S. Bank") respectfully submits this Reply Memorandum of Law in Support of its Motion for Summary Judgment and in response to the Opposition of Defendant Sun Life Assurance Company of Canada ("Sun Life") to U.S. Bank's Motion.[1]

## PRELIMINARY STATEMENT

Certain basic facts in this case are not disputed and they all compel the conclusion that New York law applies. Peter Van de Wetering, the insured, lived in New York; the broker who sold him the policy at issue (the "Policy") worked in New York; and all relevant contacts between the broker and Mr. Van de Wetering relating to the Policy occurred in New York. Under New York choice of law rules, these facts mandate the application of New York law. And under New York law, Sun Life's challenge to the Policy is time-barred. *See New England Mut. Life Ins. Co. v. Caruso*, 535 N.E.2d 270 (N.Y. 1989).

In its opposition to U.S. Bank's Motion for Summary Judgment, Sun Life makes a number of irrelevant and ultimately flawed points to argue that Delaware law applies in this case. First, Sun Life hypothesizes, without citing any evidence, that when Coventry Capital I LLC ("Coventry Capital") provided financing for the Policy, it intended Delaware law to apply. But even if true, Coventry Capital's intent is irrelevant because Coventry Capital was not a party to the Policy.[2] Significantly, the actual parties to the Policy did not include a choice of law provision in the Policy. Second, Sun Life alleges that the Policy was delivered to the original owner in Delaware, citing authority from jurisdictions in which that fact might be dispositive

---

[1] On February 10, 2016, the parties jointly called Chambers and were informed that the page limit for reply briefs is 25 pages. This brief complies with this instruction.

[2] Likewise, Sun Life's suggestion that the subsequent acts of any other entity, such as Coventry First LLC ("Coventry First") or U.S. Bank as purchasers of the Policy in the secondary market, could have bearing on the choice of law analysis is similarly without merit. As non-parties to the insurance Policy when it was issued, these entities are irrelevant for choice of law purposes.

under a *lex loci contractus* choice of law analysis.  But that is not the test in New York.

Applying New York's center of gravity test or the Restatement test, both of which focus on

where the insured life is located, the Policy is governed by New York law.  Finally, Sun Life

asserts that New York has no interest in this case.  This is incorrect.  New York has a significant

interest in the regulation and oversight of insurance companies who write policies and receive

premiums on the lives of its citizens as well as the brokers who do business with those insureds

entirely in New York.

But even if Sun Life were correct that Delaware law applies, such that Sun Life's

challenge is not time-barred, U.S. Bank's Motion for Summary Judgment should be granted and

Sun Life's Motion for Summary Judgment should be denied.  The undisputed facts here

demonstrate that an insurable interest existed at the inception of the Policy.  Contrary to Sun

Life's baseless assertions, there was no plan or agreement among any third parties to wager on

Mr. Van de Wetering's life.  Rather, the evidence shows that Mr. Van de Wetering needed life

insurance and procured the Policy after evaluating his coverage options.  In order to finance

premiums for the Policy, Mr. Van de Wetering used a loan program approved by Sun Life,

which many senior citizens and others in need of insurance and with illiquid assets have used to

avoid liquidating other assets.  That Mr. Van de Wetering used a loan does not negate the fact

that an insurable interest existed.  For the first two years after taking out the Policy, Mr. Van de

Wetering's children, as the ultimate beneficiaries of the Policy, would have received the death

benefit if he died in that period.  After receiving multiple offers for the Policy, Mr. Van de

Wetering later sold the Policy, making a profit on the sale.  These undisputed facts support that a

valid insurable interest existed at the inception of the Policy.  Thus, U.S. Bank is entitled to the

$10 million death benefit.  U.S. Bank's Motion for Summary Judgment should be granted, and Sun Life's Motion for Summary Judgment should be denied.

## LEGAL ARGUMENT

### I.   New York Law, Not Delaware Law, Governs This Dispute

As set forth in U.S. Bank's Motion for Summary Judgment, there is no genuine issue of material fact regarding choice of law in this case.  Under New York choice of law rules – not the choice of law rules of other states, which Sun Life seeks to apply – this Court must look at the significant contacts to the state and the most significant contact in the life insurance context is the location of the insured risk.  Here, Mr. Van de Wetering, the insured, lived in New York and all contact with the him took place in New York.  As a result, New York law governs the Policy.

In its failed efforts to apply Delaware law to this case, Sun Life attempts to muddy New York's clear choice of law analysis by arguing that Coventry Capital, a non-party to both the Policy and this case, could somehow dictate which law applies.[3]  But Sun Life's argument misses the mark.  Neither Coventry Capital, nor either of the subsequent purchasers of the Policy in the secondary market, Coventry First or U.S. Bank, was a party to the Policy.  More importantly, had any of the parties to the agreement – namely, Mr. Van de Wetering, the Trust, and Sun Life – intended for Delaware law to apply to the Policy, they could have evidenced that intention by including a Delaware choice of law provision in the Policy.  But they did not.

As the drafter of the Policy, nothing prevented Sun Life from inserting a choice of law provision selecting Delaware law as many insurers do.  *See*, *e.g.*, *Greenberg v. Aetna Life Ins. Co.*, 421 F. App'x 124, 125 (2d Cir. 2011).  In fact, Sun Life regularly includes state-specific

---

[3] While Sun Life asserts that "Coventry" orchestrated the transaction at issue, Sun Life never deposed any Coventry entity.  Moreover, while Sun Life's Opposition to U.S. Bank's Motion for Summary Judgment attempts to blur the lines between Coventry First and Coventry Capital by generic references to "Coventry," the fact remains that Coventry First and Coventry Capital are legally distinct entities.  (Welsh Decl., ¶ 2 (Astiz Decl., Ex. SSS)).

designations in its policy forms when they are drafted to comply with and intended to be governed by a particular state's law.  (Sun Life CMF ¶ 6).[4]  It is well-settled that the terms of an insurance contract are construed against the drafter and in favor of the insured.  *See*, *e.g.*, *Westview Assocs. v. Guar. Nat'l Ins. Co.*, 740 N.E.2d 220, 223 (N.Y. 2000).  Sun Life cannot now avoid the application of New York law, as required by New York conflict of laws principles, merely because Delaware law is more favorable to its position.

A.   **Life Insurance Contracts Are Governed By the Law of the Insured's Domicile, and as Such, New York Law Governs the Policy**

Applying the proper tests (which Sun Life urges this Court against), New York law applies to the Policy and in this dispute for multiple reasons.  First, under the center of gravity test employed by New York courts the single most important contact in the grouping of contacts analysis for a life insurance contract is the domicile of the insured.  Second, New York follows the Restatement approach which dictates that New York law applies because, under the Restatement, the law of the insured's domicile generally governs absent an effective choice of law by the insured in the application, and here, neither Mr. Van de Wetering nor the Policy specified any choice of law.  Third, Sun Life has not and cannot contest the undisputed fact that the only life insured by the Policy was Mr. Van de Wetering.  And New York courts focus their choice of law analysis on the location and domicile of the *life of the insured* – not the location of the owner of the policy.  Finally, New York applies in this case based on New York's substantial governmental interest in protecting insureds that live in the state and in regulating the activities of insurers and brokers who do business in New York.

---

[4] References in the form "Sun Life CMF ¶ __" are to Sun Life's Counterstatement of Additional Undisputed Material Facts and the exhibits and deposition testimony cited therein.

1. **The Center of Gravity Test Requires
   the Application of New York Law**

Applying New York's center of gravity test to the facts of this case, the law of New York, Mr. Van de Wetering's domicile, governs the Policy.  This test considers four primary contacts:  (1) the place of contracting; (2) the place of performance and negotiation; (3) the location of the subject matter; and (4) the domicile or place of business of the contracting parties.[5]  *Patel v. New York Life Ins. Co.*, No. 11-Civ-4895, 2012 U.S. Dist. LEXIS 72717, at *12-14 (S.D.N.Y. May 21, 2012).  Applying this test, courts have repeatedly held that the law of the state where the insured was domiciled at the time that he applied for policy should govern in policy disputes.  *Id.* ("[W]hen the rights created by a life insurance contract are disputed, courts generally apply the local law of the state where the insured was domiciled at the time the policy was applied for."); *Johnson v. Metro. Life Ins. Co.*, 880 N.Y.S.2d 842, 845 (N.Y. Sup. Ct. 2009) (holding a life insurance contract "should be governed by the law of the state 'which the parties understood to be the principal location of the insured risk,' . . . i.e., the insured's state of residence.").

Grouping of these contacts leads to the application of New York law in this case. The life insurance contract was arranged and negotiated between Bruce Mactas (acting as the Policy broker on Sun Life's behalf) and Mr. Van de Wetering, who lived in New York.  Both individuals conducted their business related to the Policy entirely in New York, either in person in New York or over the phone using Mr. Van de Wetering's New York phone number.  (SUF ¶¶ 49-52).[6]  The subject matter of the contract is Mr. Van de Wetering's life, and he lived, worked, and died in New York.  (SUF ¶ 11); (USBANK_VANDEWETERING-0000155-60 (Walsh Decl.

---

[5] Notably, place of delivery, the Delaware contact Sun Life insists is dispositive here, is not among these factors.

[6] References in the form "SUF ¶ __" are to U.S. Bank's Statement of Undisputed Material Facts Pursuant to Local rule 56.1 and the exhibits and deposition testimony cited therein.

I., Ex. UU)))[7].  Finally, Mr. Van de Wetering, the most important party to the transaction as the insured, was at all times domiciled in New York.[8]  (SUF ¶ 11).  And while Sun Life asserts that the place of contracting was Delaware, there is no evidence in the record that Mr. Van de Wetering or his broker ever traveled outside New York to sign the application or for any other reason related to the Policy.  (SUF ¶¶ 14-16, 33-34, 41-52).

Sun Life points to two cases in an effort to establish that the grouping of contacts analysis here should deviate from the general rule that the law of the insured's domicile governs.  (Sun Life Memorandum of Law in Opposition to U.S. Bank's Motion for Summary Judgment ("Sun Life Opp."), at p. 6).[9]  Each case reflects an exceptional departure from the general rule where the *only* contact with the state of the insured's domicile was his residence.  Here, the Van de Wetering Policy was negotiated and arranged entirely in New York for a New York resident.  And as New York courts have emphasized, the location of negotiation is relevant to the choice of law inquiry because where the insured seeks and arranges for insurance coverage in his home state, he "should receive the protection accorded him by the local law of his domicile."  *2004 Stuart Moldaw Trust v. XE L.I.F.E., LLC*, 642 F. Supp. 2d 226, 237 (S.D.N.Y. 2009).

The first case, *Kramer v. Lockwood Pension Services Inc.*, 653 F. Supp. 2d 354 (S.D.N.Y. 2009), involves a fact pattern that is distinct from both the present case and most life insurance disputes.  The *Kramer* insured did not work with a broker or insurance agent in his state of domicile, Connecticut, and did not negotiate the policy in Connecticut.  *Id.* at 394.

---

[7] References to "Walsh Decl. I, Ex. ___" are to the Declaration of Jonathan J. Walsh dated January 26, 2016 served concurrently with U.S. Bank's Motion for Summary Judgment and the attached deposition excerpts and other documents referenced in U.S. Bank's Statement of Undisputed Material Facts.

[8] The place of performance is not relevant where, as here, performance (i.e., payment of the death benefit by Sun Life) has not occurred.  *See Allstate Ins. Co. v. Stolarz*, 613 N.E.2d 936, 940 (N.Y. 1993) (concluding that where an insurer refused to pay under the policy the "fifth factor, place of performance, [wa]s immaterial").

[9] Also in support of its position, Sun Life cites *Andersen v. Sun Life Assurance Co. of Canada*, No. 15 Civ. 4422, slip op. at *5 (S.D.N.Y. Nov. 13, 2015), but this opinion is irrelevant because it involved no choice of law issues or analysis.  Instead, that case involved a personal jurisdiction analysis.

Instead, the procurement of the policy took place entirely in New York with an insurance company domiciled in New York and with a New York broker.  *Id.*  Thus, the *Kramer* court applied New York law because it recognized that the insurer's arguments in support of Connecticut law, like Sun Life's arguments in support of Delaware law here, were "merely attempts to avoid the application of the two year incontestability rule."  *Id.*  *Kramer* does not support Sun Life's position.

Sun Life also relies upon *Settlement Funding, LLC v. AXA Equitable Life Insurance Co.*, No. 06 CV 5743, 2010 WL 3825735 (S.D.N.Y. Sept. 30, 2010).  Sun Life misleadingly describes this case as one in which the court conducted a choice of law analysis and held that the policy was governed by the law of the state where the trust was organized, the trustee was located and the policy was delivered.  (Sun Life Opp., at p. 6).  The *Settlement Funding* court, however, made quite clear that its holding *did not* reflect a choice of law analysis: "I conclude that no conflict exists and therefore need not engage in a choice of law analysis." 2010 WL 3825735, at *13.  While the court nevertheless included a cursory discussion of the facts relevant to choice of law, the facts of *Settlement Funding*, like those of *Kramer*, are distinct from the facts presented here because the *only* contact the policy had with the state of Ohio was the insured's residence.[10]  *Id.*

---

[10] Sun Life further relies on *Dixhuit v. Pruco Life Insurance Co.*, No. 14-CV-2165, 2014 U.S. Dist. LEXIS 119758, at *15-18 (S.D.N.Y. Aug. 27, 2014).  In *Dixhuit*, the court considered what law applied to a life insurance policy issued on the life of a resident of Monaco and a citizen of Belgium and Israel.  While acknowledging that the law of the insured's domicile is typically applied to insurance contracts under the center of gravity test, the court determined New York law governed because:  (1) the insured solicited a portfolio of life insurance policies from six New York insurance companies; (2) the policy at issue was solicited in New York through a New York agent; (3) the insured executed his application in New York; and (4) the insurance policy was delivered in New York.  *Id.* Delivery was just one of many New York contacts which, in combination, overwhelmed the foreign contact of the insured's residence in Monaco  *Id.*  Furthermore, as noted in Comment d to the Restatement (Second) of Conflict of Laws Section 192, in international cases, like *Dixhuit*, courts have frequently departed from the general rule that the local law of the insured's domicile governs a life insurance policy.  *See also Johansen v. Federation Life Ass'n*, 447 F.2d 175, 185 (2d Cir. 1971).

Neither *Kramer* nor *Settlement Funding* support application of Delaware law to this dispute.  Both cases involve the narrow exception to the general rule where the insured's domicile is the *only* contact the policy has with that state, and another state has significantly more contracts.  That is not the case here.  In contrast, at least three of the four relevant center of gravity contacts are centered in New York here: the Policy was procured by Mr. Van de Wetering, a New York resident, through his New York broker, Mr. Mactas, in New York, and all of the negotiations for the Policy occurred in New York.  (SUF ¶¶ 41-52).

In reality, Sun Life's argument in support of Delaware law is a thinly-veiled attempt to depart from the established grouping of contacts analysis performed by New York courts, and to instead rely on the doctrine of *lex loci contractus* (which applies the law of the state in which the contract was made).  Not only is this analysis improper because New York does not follow this choice of law test, but the motive behind Sun Life's reliance on this doctrine is obvious:  the application of this doctrine, *by states adopting this test*, has resulted in favorable outcomes for Sun Life because Sun Life has issued countless insurance policies to insureds utilizing Delaware trusts to purchase and hold their policies.  (Sun Life Opp., at p. 6).

Sun Life goes so far as to list eleven facts it claims "compel the application to [sic] Delaware law."  (Sun Life Opp., at pp. 4-5).  But the number of these alleged facts is wholly irrelevant to the choice of law analysis, as they relate exclusively to the location where the contract was supposedly formalized and moreover, do not give Delaware any interest in this dispute.[11]  (Sun Life Opp., at pp. 4-5); *see also Fireman's Fund Ins. Co. v. Schuster Films, Inc.*,

---

[11] Of course, some of the listed facts have no bearing on the choice of law analysis at all – specifically, that Sun Life paid premium taxes in Delaware, the existence of Delaware's insurance code (which applies only to Delaware insureds), that U.S. Bank submitted a death claim on a form that "cannot be used for policies issued in the State of New York," and that Coventry First's initial attempts to demand Sun Life comply with its contractual obligation to pay the Policy's death benefit were made with reference to Delaware law.  (Sun Life Opp., at p. 5).  Sun Life also lists its alleged reliance on an inadmissible representation that no solicitation for the Policy occurred in New York.  *Id.*  But any such reliance on Sun Life's part is also immaterial, as the undisputed facts establish that that the

811 F. Supp. 978, 984 (S.D.N.Y. 1993) (concluding New York law applied to a New York insured's policy written in California despite a "laundry list" of alleged California contacts because courts do not engage in a "mindless scavenger hunt to see which state can be found to have more contacts, but rather in an effort to detect and analyze what interest the competing states have in enforcing their respective rules.").  Even if the Court concludes that the contract was formally executed in Delaware, the other three factors in the center of gravity analysis weigh heavily in favor of the application of New York law. [12]

### 2. New York Follows the Restatement Approach Which Compels Application of New York Law as the Law of the Insured's Domicile

Section 192 of the Restatement provides:

> The validity of a life insurance contract issued to the insured upon his application and the rights created thereby are determined, in the absence of an effective choice of law by the insured in his application, *by the local law of the state where the insured was domiciled at the time the policy was applied for*, unless, with respect to the particular issue, some other state has a more significant relationship . . .

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 192.

The New York Court of Appeals has not formally addressed Section 192. Nevertheless, New York state courts, as well the Second Circuit and New York federal district courts, have consistently followed the Section's guidance and applied New York law based upon the Restatement's principle that, where the insurance contract does not contain a choice of law provision, the contract is governed by the local law of the domicile of the insured.[13]  *See 2004*

---

solicitation and negotiation of the policy occurred entirely in the State of New York.  (SUF ¶¶ 16, 33, 36, 49-52).

[12] Sun Life also asserts that it relied on representations made by the Trust regarding the execution of the Policy in Delaware and that "U.S. Bank, as the successor-in-interest to the Trust as the owner of the Policy . . . is estopped from denying the execution of the policy documents in Delaware."  (Sun Life Opp., at p. 11).  Again, even if the Court were to assume that the contract was signed in Delaware – notwithstanding the undisputed fact that it wasn't – the remaining contacts in the center of gravity analysis compel application of New York law.

*Stuart Moldaw Trust v. XE L.I.F.E., LLC*, 374 F. App'x 78, 80 (2d Cir. 2010); *Johansen*, 447 F.2d at 185; *Patel*, 2012 U.S. Dist. LEXIS 72717, at *12; *2004 Stuart Moldaw Trust*, 642 F. Supp. 2d at 236-38; *Johnson*, 880 N.Y.S.2d at 845-46.

   Sun Life seeks to apply Delaware law based on its assertion that the Trust, and not Mr. Van de Wetering, applied for the Policy in Delaware. Sun Life relies on Comment a to Section 192 of the Restatement (Second) of Conflict of Laws, which states that "[t]he rule does not apply to life insurance issued upon the life of someone other than the applicant." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 192 cmt. a. But no New York court has interpreted Comment a to preclude application of the law of the insured's domicile. *See 2004 Stuart Moldaw Trust*, 642 F. Supp. 2d at 230, 237.

   The Court of Appeals of Texas, in *American National Insurance Co. v. Conestoga Settlement Trust*, recently addressed this very issue in the STOLI context and concluded that even where a trust is the initial owner of the life insurance policy, the insured is still the applicant of the policy. 442 S.W.3d 589, 598 (Tex. Ct. App. 2014). The *Conestoga* court applied New York law to the life insurance policy at issue, despite the fact that the policy was owned by and delivered to a trust domiciled in New Jersey, because the insured was a New York citizen. *Id.* at 598-600. The court firmly rejected the insurer's argument that Comment a rendered Section 192 inapplicable because although the trust was listed as the owner of the policy, it was "issued, as required by the comment to Section 192, upon the life of the applicant/insured – herself." *Id.*

---

[13] The vast majority of other jurisdictions have also followed Section 192 and determined that the law of the insured's domicile governs life insurance contracts. *See, e.g.*, *Prudential Ins. Co. of Am. v. Athmer*, 178 F.3d 473, 477 (7th Cir. 1999); *Melville v. Am. Home Assur. Co.*, 584 F.2d 1306, 1314 (3d Cir. 1978); *Bush v. Mony Life Ins. Co. of Am.*, No. 3:07-cv-451, 2008 U.S. Dist. LEXIS 93885, at *10-11 (D. Conn. Nov. 10, 2008); *Khan v. Lincoln Benefit Life Co.*, No. 3:05-0771, 2006 U.S. Dist. LEXIS 27919, at *5, 9 (M.D. Tenn. Apr. 14, 2006); *Bowers v. Jefferson Pilot Fin. Ins. Co.*, 219 F.R.D. 578, 583 (E.D. Mich. 2004); *Dennis v. Aetna Life Ins. & Annuity Co.*, 873 F. Supp. 1000, 1003 (E.D. Va. 1995); *Stout v. Home Life Ins. Co.*, 651 F. Supp. 28, 33 (D. Md. 1986).

Other courts have considered Comment a to Section 192 and nevertheless applied the law of the insured's domicile even when the insured was not technically the "applicant."  *See*, *e.g.*, *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 405 (5th Cir. 2004) (applying Texas law to a policy procured by Wal-Mart through a Georgia trust covering a Texas employee); *Tillman v. Camelot Music, Inc.*, No. 02-CV-0761-EA(J), 2003 U.S. Dist. LEXIS 21662, at *17 (N.D. Okla. Sep. 29, 2003) (applying Oklahoma law to a life insurance policy issued to an employer in Georgia to cover the life of an Oklahoma citizen).

As Sun Life admitted, Mr. Van de Wetering was the "client," and thus, the applicant.[14]  (SUF ¶ 48).  Thus, Comment a to Section 192 does not preclude this Court from holding, consistent with Section 192, that the law of New York applies to the Policy.  This result is also consistent with the grouping of contacts analysis, advances New York's interests in having its law applied to policies covering the lives of New York citizens, and promotes the goals of predictability and uniformity in conflicts of law analyses.

### 3. Mr. Van de Wetering – and Only Mr. Van de Wetering – Was the Insured Under the Policy and that Fact Compels Application Under Either Test

In cases involving life insurance, the choice of law analysis under either the center of gravity or Restatement test is properly centered on the domicile of the *insured*.  Here, there is no dispute that the insured is Mr. Van de Wetering.  Moreover, during the nine years that Sun Life insured Mr. Van de Wetering's Life, he was a New York resident.  Faced with this unsurmountable hurdle, Sun Life instead attempts to shift the Court's focus to the location of the initial owner, Wilmington Trust in Delaware.  But the fact that Mr. Van de Wetering's Policy was owned by the Trust in Delaware does not change the focus of the choice of law analysis.  It

---

[14] Sun Life (Van de Wetering) – 1000082-85 at 84 (Astiz Decl., Ex. TTT) (listing "applicant's residence" and "applicant's office as potential places of examination of Mr. Van de Wetering as the proposed insured).

is undisputed that the Trust was not the insured.  Thus, under either test, New York law should

govern because Mr. Van de Wetering was the insured and he was domiciled in New York.  *2004*

*Stuart Moldaw Trust*, 374 F. App'x at 80; *Johansen*, 447 F.2d at 185; *Patel*, 2012 U.S. Dist.

LEXIS 72717, at *12; *2004 Stuart Moldaw Trust*, 642 F. Supp. 2d at 236-38; *Johnson*, 880

N.Y.S.2d at 845-46.

> **4.  New York Has a Compelling Interest in Regulating**
> **Insurance Contracts on the Lives of New York Citizens**

Sun Life's insistence that Delaware has a greater interest in the outcome of this

case than New York is baffling.  Delaware insurance law was enacted to regulate insurance

contracts on the lives of Delaware citizens and to protect Delaware insureds.  As set forth above,

Mr. Van de Wetering, however, was a New York insured.  The Trust, a Delaware entity, was not

the insured.  Delaware simply has no interest in the application of its insurance law to the Van de

Wetering Policy.

By contrast, New York's interest in protecting its domiciliary insureds like Mr.

Van de Wetering is substantial.  New York's insurance industry is highly regulated.  These

regulations are specifically designed to balance the state's need to protect its insured

domiciliaries with its need to assure the availability of insurance for its citizens.  This balance is

particularly evident in the State's treatment of contestability provisions.  *See Caruso*, 535 N.E.2d

at 272.  In *Caruso*, the Court of Appeals explained that the rationale for a rule upholding the

validity of incontestability clauses in the face of a challenge based on lack of insurable interest:

> rests on the legislative conviction that a policyholder should not
> indefinitely pay premiums to an insurer, under the belief that
> benefits are available, only to have it judicially determined after
> the death of the insured that the policy is void because of some
> defect existing at the time the policy was issued.  The
> incontestability clause fixes the insurer's promise to pay benefits

upon maturity if the policy is in force for a period of two years
during the life of the insured and the premiums have been paid.

*Id.* at 272.

The holding of *Caruso* reflects an important public policy determination made by
the New York Legislature and enforced by the state's judiciary that requiring evidence of an
insurable interest more than two years after a policy was issued imposes an unfair burden on the
policyholder and runs counter to the incontestability requirement.  *Id.* at 274.  This determination
encourages insurers to promptly investigate their policies within the two-year statutory
contestability period "or ignore the matter at [their] peril."  *Id.*  It also comports with the parties'
justified expectations and prevents the forfeiture that would result from a refusal to enforce the
contestability provision.  *Id.*; *see New England Mut. Life Ins. Co. v. Doe*, 710 N.E.2d 1060, 1062
(N.Y. 1999) ("In the words of Justice Oliver Wendell Holmes, 'The object of the
[incontestability] clause is plain and laudable--to create an absolute assurance of the benefit, as
free as may be from any dispute of fact except the fact of death, and as soon as it can reasonably
be done.'").

Application of the public policy rationale of *Caruso* is on point here.  Like the
insurer in *Caruso*, Sun Life waited several years and accepted millions of dollars in premiums
before contesting the Policy.  New York has a substantial interest in having its law applied to the
Policy, as that law was drafted to prevent precisely this sort of behavior on the part of companies
insuring New York citizens.

Sun Life asserts that New York has somehow disclaimed its interest in the
application of New York law here because the state's incontestability statute specifies that it
covers policies delivered or issued for delivery in New York.  This assertion is false.  Nothing in
the statute precludes its application to policies delivered or issued for delivery outside the state.

*See* N.Y. Ins. L. § 3203 (2015). In fact, New York courts have applied New York insurance law to numerous policies that were formally "delivered" elsewhere. *See*, *e.g.*, *Am. Ref-Fuel Co. v. Employers Ins. Co.*, 705 N.Y.S.2d 67, 71 (N.Y. App. Div. 2000) (applying New York law to insurance policies delivered in Texas because they covered New York corporations and "the location of the insured and the risk to be insured are determinative"); *Turner Constr. Co. v. Navigators Ins. Co.*, No. 157322/13, 2015 N.Y. Misc. LEXIS 2704, at \*12, 17-18 (N.Y. Sup. Ct. July 23, 2015) (applying New York law to an insurance policy delivered in Missouri because the insured risk was located in New York). Again, Sun Life attempts to reduce the choice of law inquiry to a *lex loci contractus* analysis by arguing delivery of the Policy in Delaware compels application of Delaware law. It does not. New York law applies regardless of the place of delivery because the Policy's center of gravity is in New York.

Even if the Court deems delivery to be significant to the choice of law analysis, the undisputed facts here establish that under New York law, the Policy was issued for delivery in New York. The New York Court of Appeals has stated that "[a] policy is 'issued for delivery' in New York if it covers both insureds and risks located in this state," regardless of where the policy is actually physically delivered. *See Preserver Ins. Co. v. Ryba*, 893 N.E.2d 97, 100 (N.Y. 2008); *Columbia Cas. Co. v. Nat'l Emergency Servs.*, 723 N.Y.S.2d 473, 373 (N.Y. App. Div. 2001) (rejecting plaintiff's claim that New York insurance law was inapplicable "merely because the policy in question was issued out of State" because "[t]he policy expressly cover[ed] insureds and risks located in New York and must therefore be deemed issued for delivery in New York").

When Sun Life undertook to insure the life of a New York citizen and Mr. Mactas, a New York-based broker, solicited and negotiated the Policy with Mr. Van de Wetering in his home state of New York on Sun Life's behalf, Sun Life subjected itself to the

law of New York.  *See 2004 Stuart Moldaw Trust*, 642 F. Supp. 2d at 237.  Thus, New York law

applies to the Policy.

**II.     Even if Delaware Law is Applied, U.S. Bank's Summary Judgment Motion Should
        Be Granted Because There Was an Insurable Interest Supporting the Policy**

If the Court determines that Delaware law applies (which it should not), then U.S.

Bank's Motion for Summary Judgment should still be granted because the undisputed facts show

that there was an insurable interest in the Policy at its inception.  Sun Life does not like these

facts, so it instead argues that the Court should not credit the testimony of certain deponents

notwithstanding the absence of any evidence to contradict their testimony.  But Sun Life goes too

far by attempting to create a disputed issue of fact regarding the credibility of these witnesses

and only shows that its motion for summary judgment should be denied, while wholly failing to

rebut the undisputed evidence that demonstrates that U.S. Bank is entitled to summary judgment.

The Court should reject these arguments and grant summary judgment to U.S. Bank.

**A.     Mr. Van de Wetering Acquired the Policy of His Own
        Volition and For Legitimate Estate Planning Purposes**

Delaware courts look to whether the insured was used as an instrumentality to

obtain the policy.  *Price Dawe*, 28 A.3d at 1074.  While Sun Life attempts to cast this case as a

generic STOLI case in which the insured was used as an instrumentality to obtain a policy, the

facts do not support Sun Life's claim.  (Welsh Decl., ¶ 8 (Astiz Decl., Ex. SSS)).[15]  Sun Life

presents absolutely no facts that Mr. Van de Wetering had entered into an express agreement

with Coventry First,[16] any of its affiliates, or anyone else to sell the Policy, or that he was used as

---

[15] References to "Astiz Decl., Ex. __" are to the Declaration of Alyssa J. Astiz dated February 19, 2016 served
concurrently with U.S. Bank's Reply in Support of its Motion for Summary Judgment and the attached deposition
excerpts and other documents referenced in this Reply.

[16] Coventry First and Coventry Capital are legally distinct entities.  (Welsh Decl., ¶ 2 (Astiz Decl., Ex. SSS)).  But
even if they were not, neither Coventry First nor any of its affiliates are aware of any plan or agreement at or about
the time the Policy was issued – the only relevant time – between or among Mr. Van de Wetering, his broker, or any

-15-

a conduit by any Coventry entity to acquire the Policy.  (*Id.*).  Indeed, Sun Life's entire argument

hinges on the Origination Agreement between Coventry Capital, U.S. Bank, and AIG.  (Sun Life

Opp., at pp. 17-18).

First and foremost, Sun Life improperly characterizes the Origination Agreement

as an agreement through which "Coventry would generate policies that were later sold to AIG."

(*Id.* at p. 17).  This description is untrue and is unsupported by the record.  (Welsh Decl., ¶¶ 2, 8

(Astiz Decl., Ex. SSS)).  There is no provision in the Origination Agreement that states that

Coventry Capital would "generate" policies.  And Sun Life's reference to paragraphs 4 through 6

of its Statement of Material Facts does not provide any support for its unfounded assertions.

These paragraphs simply state that Coventry Capital, AIG, and U.S. Bank entered into the

Origination Agreement, that AIG was defined as the "Purchaser," Coventry Capital was the

"Originator and Seller," that U.S. Bank held various intermediary or trustee roles, and that this

contractual framework required Coventry Capital to sell and AIG to buy certain policies.  (Sun

Life SUF ¶¶ 4-6).[17]  These assertions fail to establish that Coventry Capital "generated" policies

or orchestrated the transaction.  (Welsh Decl., ¶¶ 2, 8 (Astiz Decl., Ex. SSS)).

Instead, the undisputed facts here show that Mr. Van de Wetering wanted life

insurance and procured the Policy for his own benefit and the benefit of his family.  (SUF ¶¶ 16-

20, 55-56).  At the time that Mr. Van de Wetering took out the Policy, he had no intent to

immediately transfer it, but rather, procured it for estate planning purposes.  (SUF ¶¶ 16-20, 44).

Life insurance was important to Mr. Van de Wetering and important for estate planning purposes

because he had a large estate including a large amount of real estate, and the estate was illiquid.

---

third party and Coventry or any Coventry entity to sell or relinquish the Policy to Coventry First or any Coventry entity.  (*Id.* ¶ 8).

[17] References in the form "Sun Life SUF ¶ __" are to Sun Life's Statement of Undisputed Facts, submitted in support of its Motion for Summary Judgment and the exhibits and deposition testimony cited therein.

(SUF ¶¶ 18-20).   Life insurance would help protect Mr. Van de Wetering's estate from significant taxes in the event of his death.  (SUF ¶ 21).

Sun Life fails to demonstrate that Mr. Van de Wetering had no estate planning need for the Policy.  Sun Life's arguments are largely based on mischaracterizations of the testimony.  (Sun Life Opp. at pp. 22-23).  Sun Life incorrectly states that Mr. Mactas, "himself admits that he does not know if the Sun Life Policy was taken out for estate planning purposes and that was merely his assumption based on his professional experience."  *Id.* at 22.  Mr. Mactas never admitted to making any assumptions regarding the purpose for procuring the Policy.  (SUF ¶¶ 17-27).  In fact, Mr. Mactas testified that he discussed life insurance and estate planning with Mr. Van de Wetering at their first meeting.  (*Id.*).  He also testified that Mr. Van de Wetering expressed that he wanted life insurance because he had a large estate, the estate was illiquid, and he was worried about estate taxes upon his death.  (SUF ¶¶ 19-21).  The record is thus clear that Mr. Mactas was not assuming anything, but rather was relying on his personal communications with Mr. Van de Wetering in concluding that the Policy was procured as part of an estate plan.[18]

Sun Life also relies on irrelevant evidence in declaring that Mr. Van de Wetering's net worth was a "small fraction" of the amount reported to Sun Life in an effort to undermine the undisputed fact that he acquired the Policy for legitimate estate planning

---

[18] Sun Life also downplays the extent to which Mr. Van de Wetering's legal counsel was aware of the insurance policies on his life and their role in his estate plans.  In addition to Mr. Mactas' conversation with an estate lawyer (Mactas Dep. 159:3-11 (Walsh Decl. I, Ex. C)), an attorney named Jeffrey Fetter communicated via email with Chris Santini, one of the financial advisors who had introduced Mr. Van de Wetering to Mr. Mactas.  (M002129 (Astiz Decl., Ex. UUU)).  In a message dated December 30, 2006, Mr. Fetter discussed a proposal for updating the Van de Wetering's estate plan and expressed that he was "looking forward to working with you and Peter with the ongoing insurance planning that you are doing with the family."  *Id.*  Mr. Fetter and his firm thereafter remained involved with Mr. Van de Wetering's estate planning up until his death, as evidenced in his probate file.  (Sun Life (Van de Wetering) – 1014317, 1014321 (Astiz Decl., Ex. VVV)).  Clearly, Mr. Van de Wetering's estate planning lawyers were well-apprised of the insurance policies obtained through Mr. Mactas and their role in Mr. Van de Wetering's estate planning.

purposes.  (Sun Life Opp., at p. 23).  Mr. Van de Wetering's 2014 probate filings have no

bearing on whether he had a need for life insurance in 2005 when he applied for it, the relevant

period for the insurable interest analysis.  Furthermore, Sun Life misstates the testimony of

Walter Gravagna, Mr. Van de Wetering's son-in-law.  Mr. Gravagna testified only that there had

been a valuation of the company at some point in the past, not that this valuation had occurred in

2005.  (Sun Life SUF ¶ 57).  Sun Life's conclusions regarding Mr. Van de Wetering's net worth

at the time he applied for the Policy are therefore unsupported by its cited evidence.

Finally, Sun Life relies upon the expert report of the Honorable C. Raymond

Radigan.  Judge Radigan asserts that Mr. Van de Wetering did not have a legitimate estate

planning need for the Sun Life Policy.  In part, Judge Radigan argues that, in the typical process

of estate planning, a trusts and estates lawyer "would not recommend that the client be burdened

with newly acquired life insurance policies requiring the payment of substantial premiums" and

"would discourage any undertaking by the client concerning life insurance that is procured or

paid for by individuals who do not have an insurable interest in the client's life."  (Radigan

Report (Bloor Decl. II, Ex. 5 at p. 8)).[19]  This analysis entirely overlooks the fact that Mr. Van de

Wetering's estate planning attorney was aware of the life insurance policies on Mr. Van de

Wetering's life and viewed them as part of his estate plan, not as part of a STOLI scheme.

(M002129 (Astiz Decl., Ex. UUU)).

To the extent that Judge Radigan claims that Mr. Van de Wetering took out more

insurance than he needed for estate planning purposes, as Judge Radigan concedes, at the time

Mr. Van de Wetering applied for the Policy, an additional $15 million in life insurance coverage

---

[19] References to "Bloor Decl. II, Ex. __" are to the Declaration of John Bloor dated February 9, 2016 served
concurrently with Sun Life's Opposition to U.S. Bank's Motion for Summary Judgment and the attached deposition
excerpts and other documents referenced in that Opposition.

was still "pending."  (Radigan Report (Bloor Decl. II, Ex. 5 at p. 5)).  It was therefore uncertain whether Mr. Van de Wetering would receive all of the coverage for which he had applied.  Thus, the additional insurance Mr. Van de Wetering later obtained does not imply that he did not have an estate planning need for insurance at the time he applied for the Sun Life Policy.

> **B.** **Mr. Van de Wetering Paid For the Policy Using a Sun Life Approved Premium Financing Program That He Chose After Evaluating His Loan Options, and He Paid The Origination Fee Himself**

While Sun Life attempts to paint the false picture that Mr. Van de Wetering applied for the Policy for some reason other than to obtain life insurance coverage, and that he never paid for the Policy, Sun Life fails to acknowledge several critical points.  First, the undisputed facts show that Mr. Van de Wetering paid for the Policy using funds he obtained in a loan from LaSalle Bank, N.A. ("LaSalle") and Coventry Capital.  (SUF ¶ 37).  And under Delaware law, "[a]n insured's ability to procure a policy is not limited to paying the premiums with [his] own funds; borrowing money with an obligation to repay would also qualify as an insured procuring a policy."  *Lawrence Rucker*, 869 F. Supp. 2d at 563.  Second, Mr. Van de Wetering executed the loan proposal himself; he was not compelled to enter the lending transaction as a conduit for a third party who wished to eventually purchase the Policy from him. (SUF ¶ 37).  He also certified that he had the opportunity to review each of the transaction documents that required his signature, that he had a complete understanding of each of the transaction documents, and that he was not relying upon any advice from LaSalle or Coventry First or any representations that were inconsistent with the information contained in the transaction documents.  (M003871-74 (Astiz Decl., Ex. WWW)).

Second, Mr. Van de Wetering considered a number of premium financing programs before ultimately choosing Coventry Capital.  (SUF ¶¶ 28-32).  Prior to applying for premium financing with Coventry Capital, Mr. Van de Wetering and Mr. Mactas discussed these

various programs.  (SUF ¶¶ 26-32).  Mr. Van de Wetering and Mr. Mactas reviewed the layout of the Coventry Capital program, the amount that would be borrowed, the length of the term, the amount that would be due at the end of the term, that it was nonrecourse in nature, and that it was approved by Sun Life.  (SUF ¶ 29).  Moreover, Mr. Mactas or his office obtained premium financing loan proposals for the Policy from companies other than Coventry Capital.  (SUF ¶ 31).  The terms of another loan proposal that Mr. Mactas obtained for the Policy for Mr. Van de Wetering were not as favorable as the Coventry Capital loan.  (SUF ¶ 32).  After Mr. Van de Wetering and Mr. Mactas discussed the differences between Mr. Van de Wetering funding premiums personally and funding them through a loan, and Mr. Van de Wetering considered funding the Policy on his own, Mr. Van de Wetering ultimately applied for premium financing with Coventry Capital.  (SUF ¶¶ 26-29, 37).  Although Sun Life believes that this testimony from Mr. Mactas should not be credited, (Sun Life CMF ¶¶ 29-32), it has proffered no evidence to contradict these undisputed facts.  For this reason, summary judgment in favor of U.S. Bank should be granted (and summary judgment in Sun Life's favor would be inappropriate).

Third, the Coventry Capital program utilized by Mr. Van de Wetering was approved by many insurance carriers.  (SUF ¶ 28).  Indeed, Sun Life itself touted various premium financing programs, and approved the Coventry Capital program.  (SUF ¶¶ 28-29); (Sun Life (Van de Wetering) – 0001755-64 (Astiz Decl., Ex. XXX)).  Although Sun Life denies its approval of the Coventry Capital program, it fails to produce competent evidence to rebut Mr. Mactas' testimony.  (Sun Life Opp., at 9, 16 & n.12).  The memorandum referenced by Sun Life does not state that Sun Life would not "accept non-recourse premium financing."  (Sun Life CMF ¶ 11).  Additionally, Sun Life's only evidence that it "precluded" the Coventry Capital program comes from an undated, internal document that gives no indication when this decision

was made.  (Sun Life CMF ¶ 12).  In fact, Sun Life's internal emails suggest that this document was not created until mid-2007, long after the Policy was issued.  (Sun Life (Van de Wetering) – 0001766-67 (Astiz Decl., Ex. YYY)).

Finally, Mr. Mactas believes that Mr. Van de Wetering invested in the Policy by paying Coventry Capital the $4,475 origination fee in conjunction with the loan.  (SUF ¶ 39). And while Sun Life argues that there is no evidence Mr. Van de Wetering paid this fee, it fails to provide any evidence to suggest that anyone other than Mr. Van de Wetering made this payment or contradict Mr. Mactas' testimony.[20]

Instead, Sun Life again attempts to paint the false picture that Coventry Capital in some way orchestrated this transaction by requesting that Mr. Van de Wetering execute various forms and requesting a life expectancy report, claiming these documents "evidence" Coventry Capital's role as orchestrator.  (Sun Life Opp., at p. 19).  Sun Life's argument fails.  Not only were these routine and innocuous acts performed for every policy (and U.S. Bank disputes Sun Life's characterizations of these documents in its Counter-Statement), but Sun Life's myopic view ignores the facts outlined in Section II-A, that clearly show Mr. Van de Wetering was not used as an instrumentality, but rather, took the Policy out of his own volition.

---

[20] In this section, Sun Life refers to three policies that utilized premium financing and were allegedly "taken out at the same time on Mr. Van de Wetering's life at Coventry's behest that were part of a STOLI scheme":  (1) the Sun Life Policy; (2) a $10 million AXA Equitable ("AXA") policy; and (3) a $5 million PHL Variable Insurance Company ("PHL") policy.  (Sun Life Opp., at pp. 18-19).  Although completely irrelevant for the purposes of determining if an insurable interest existed in the Policy at issue, Sun Life asserts that premium financing was used for all these policies, and that the policies are therefore void.  Sun Life is incorrect in its assertions that *any* of these policies were STOLI.  In fact, both AXA and PHL paid the death benefits on these policies in June of 2014.  Unlike AXA and PHL, Sun Life is no longer in the life insurance business.  And while insurance companies still in this business, like AXA and PHL, are conscious to only contest policies they view as questionable, Sun Life sees no downside in contesting any and all policies.  Indeed, Sun Life has alleged that the Policy is void *ab initio*, despite the mountain of evidence to the contrary.

C.      **The Trust Was Funded and Created by Mr. Van de Wetering**

Delaware courts also look to whether the trust at issue was funded and created by the insured to determine whether the insured procured the policy.  *See Lawrence Rucker*, 869 F. Supp. 2d at 565; *Price Dawe*, 28 A.3d at 1078.  The undisputed evidence indicates that Mr. Van de Wetering and his wife established and funded Trust #III on September 9, 2005 with $100, after consulting an attorney.  (SUF ¶¶ 35-36); (Van de Wetering Dep. Ex. 1 at 19, 23 (Walsh Decl. I, Ex. Q)).  Thereafter, on November 2, 2005, Mr. Van de Wetering established and funded the Trust on November 2, 2005, and Trust #III was the owner of the Trust.  (SUF ¶ 40).  Mr. Van de Wetering further funded the Trust with the Policy by naming the Trust as the Policy owner.  (*Id.*).  Mr. Van de Wetering also funded the premium payments with his own funds, borrowing money through a loan.  (SUF ¶ 37).  And Mr. Van de Wetering established Trust #III, and thereafter the Trust for his own benefit and the benefit of his family.  (SUF ¶¶ 35-36, 40, 44, 55-56).  *See Lawrence Rucker*, 869 F. Supp. 2d at 566-68.

Further, there is no evidence that Coventry Capital coordinated the creation of the Trust, as alleged by Sun Life.  (Sun Life Opp., at p. 24).  As support for this contention, Sun Life cites to paragraphs 36 through 37 of its Statement of Undisputed Facts.  These paragraphs merely state that the documents at issue established that the Policy owner would be a Delaware statutory trust, that Wilmington Trust would serve as trustee, that the Trust Agreement at issue was executed, and that the Trust and a sub-trust were created.  (Sun Life SUF, ¶¶ 36-37).  There is no evidence that Coventry Capital orchestrated this transaction.  Further, Sun Life's assertion that "the lender selected by Coventry [Capital] was LaSalle Bank" is categorically untrue.  As described above, Mr. Van de Wetering and Mr. Mactas discussed a number of premium financing options, including the Sun Life-approved LaSalle program.  (SUF ¶¶ 27-30).  After

reviewing proposals from companies other lenders as well, Mr. Van de Wetering selected the LaSalle loan because the terms of other loan proposals were not as favorable.  (SUF ¶¶ 31-32).

Simply because Coventry Capital had some role in the creation of the later-created Trust does not indicate that Coventry Capital orchestrated the entire transaction.  And Sun Life provides no evidence to support such an assertion.

### D.   Mr. Van de Wetering Was Not Bound to Sell the Policy to Any Coventry Entity or Anyone Else

The undisputed facts show that Mr. Van de Wetering was not bound to sell the Policy to a Coventry entity or anyone else, either at the time of the Policy's procurement or when he subsequently sold it to Coventry First.  (Welsh Decl., ¶ 8 (Astiz Decl., Ex. SSS)) (SUF ¶¶ 59-64).  Mr. Van de Wetering and his Trust sold the Policy to Coventry First only after considering the potential sale to other third parties and entertaining their bids, and only after the sale was negotiated with Coventry First and that company made the most attractive offer.  (SUF ¶¶ 59-63); (CF_VDW000278-282 (Astiz Decl., Ex. ZZZ); CF_VDW000303-307 (Astiz Decl., Ex. AAAA); CF_VDW000316-319 (Astiz Decl., Ex. BBBB); CF_VDW000372-73 (Astiz Decl., Ex. CCCC); CF_VDW000433-435 (Astiz Decl., Ex. DDDD); CF_VDW000478-481 (Astiz Decl., Ex. EEEE)).  As a condition to the sale of the Policy, the Trust made representations to Coventry First regarding the existence of an insurable interest, the veracity of the statements made in the application for the Policy, the fair nature of the transaction, and the Policy's incontestable status.  (Welsh Decl., ¶¶ 7-8 (Astiz Decl., Ex. SSS)).  And Sun Life itself confirmed the Policy's incontestable nature prior to consummation of the sale.  (*Id.* ¶ 5).

In the absence of evidence of an agreed-upon sale to a third party – and Sun Life has no evidence of one, and certainly no evidence of one with Coventry First or any other Coventry entity (Welsh Decl., ¶ 8 (Astiz Decl., Ex. SSS)) – the undisputed facts establish that

Mr. Van de Wetering procured the Policy for his own benefit, entered into an agreement to sell the Policy for his own benefit, and was not used as a conduit by Coventry or any other third party investors. *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Trust*, 28 A.3d 1059, 1074 (Del. 2011); *Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust*, 869 F. Supp. 2d 556, 561 (D. Del. 2012). The fact that the Policy was sold in the secondary market after approximately two years is simply not enough to render the Policy "STOLI" because under Delaware law, mere sale of a policy to a third party is not sufficient to defeat the existence of an insurable interest if there is no arrangement that the eventual purchaser or any particular investor would purchase the policy. (Welsh Decl., ¶ 9 (Astiz Decl., Ex. SSS)); *see Lawrence Rucker*, 869 F. Supp. 2d at 565. As such, summary judgment should be granted in favor of U.S. Bank, and Sun Life's Motion for Summary Judgment should be denied.

### E.   Mr. Van de Wetering Did Not Intend to Immediately Transfer the Policy

Based on the foregoing, the undisputed evidence also shows that Mr. Van de Wetering was interested in obtaining insurance coverage for his own purposes. (SUF ¶¶ 17-21, 44). There is no evidence of an intent to transfer the policy at the time it was originated, and Sun Life cites to none.[21]

### CONCLUSION

The undisputed facts require summary judgment for U.S. Bank, and Sun Life's motion for summary judgment should be denied. There is no genuine issue of material fact regarding choice of law: New York law should be applied and for this reason alone Sun Life's Motion for Summary Judgment should be denied. The inquiry should stop there. However, if

---

[21] Sun Life claims that U.S. Bank argued in its Motion for Summary Judgment that an insurable interest existed in the Policy because Mr. Van de Wetering kept the Policy for two years and only later sold it to Coventry First. As an initial matter, U.S. Bank did not make this argument. (U.S. Bank MSJ, at pp. 19-22). In any event, the existence of an insurable interest here turns on Mr. Van de Wetering's intent at the time of origination, and the fact that he held the policy for two years has little, if any, bearing on whether he intended on selling the Policy at the time he acquired it.

the Court undertakes an insurable interest analysis, an insurable interest exists under Delaware

law.  For all the reasons set forth herein, U.S. Bank respectfully requests that Sun Life's Motion

for Summary Judgment be denied in its entirety.

New York, New York
February 19, 2016

Respectfully submitted,

CURTIS, MALLET-PREVOST,
   COLT & MOSLE LLP

By:  ____*/s/ Steven J. Reisman*____
        Steven J. Reisman
        Jonathan J. Walsh
        Nicole M. Mazanitis
        Alyssa J. Astiz
101 Park Avenue
New York, New York 10178-0061
(212) 696-6000
sreisman@curtis.com
jwalsh@curtis.com
nmazanitis@curtis.com
aastiz@curtis.com

*Attorneys for Plaintiff*
*U.S. Bank National Association*